PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JODY ELMER, *et al.*, | ) | |
| | ) | CASE NO.  4:13-CV-02735 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| S.H. BELL COMPANY, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 53] |
| | ) | |

Pending is S.H. Bell Company's ("Defendant")[1] Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 53. Defendant moves the Court to dismiss the second amended complaint (ECF No. 50) filed by Jody Elmer, Benjamin Milliron, Emily Milliron, and Steve Adkins ("Plaintiffs").[2]  The Court has been advised, having reviewed Plaintiffs' second amended complaint and exhibits (ECF No. 50); Defendant's Motion to Dismiss (ECF. No. 53); Plaintiffs' opposition brief (ECF. No. 56); Defendant's reply (ECF No. 57); and the applicable law.  For the reasons set forth below, the Court grants in part, and denies in part, Defendant's Motion to Dismiss (ECF No. 53).

---

[1] On May 29, 2015, Plaintiffs voluntarily dismissed defendants John Bell, Samuel Bell, and Rusty Davis from the above-captioned matter.  ECF No. 55.  Only S.H. Bell Company remains as a defendant.
[2]  This order does not address the Plaintiffs' request for class certification pursuant to Fed. R. Civ. P. 23(c).

(4:13CV02735)

# I.  Background

Until recently, Defendant operated two facilities in the East Liverpool, Ohio area: the

Little England facility ("Little England"), and the Stateline facility ("Stateline").  ECF No. 50 at

PageID#: 1891, ¶ 19.  Little England is located entirely in Ohio, and Stateline spans the border

between Ohio and Pennsylvania.  ECF No. 50-1.  Defendant closed Little England in 2010.  ECF

No. 50 at PageID#: 1891, ¶ 19.  Defendant continues to operate Stateline.  ECF No. 50 at

PageID#: 1891, ¶ 19.  Defendant's business consists of storing and processing materials for

industrial customers, including various metals, frac sands, minerals, fertilizers, and semi-finished

raw materials.  ECF No. 50 at PageID#: 1891, ¶ 17.  As part of its operations, Defendant crushes

these materials into pieces, and then transports the material to customers by truck, barge, or rail.[3]

ECF No. 50 at PageID#: 1891, ¶ 19.

Plaintiffs are residents of East Liverpool who live within two miles of Defendant's

operations.  ECF No. 50 at PageID#: 1888, ¶ 4-8.  They allege that Defendant's operations emit

particulate matter, including manganese and chromium, into the air.  ECF No. 50 at PageID#:

1892, ¶ 22.  According to the Environmental Protection Agency ("EPA") and the Ohio

Environmental Protection Agency ("OEPA"), inhaled manganese and inhaled chromium

adversely affect a person's health.  ECF No. 50-5 at PageID#: 1946.  Long-term inhalation of

manganese can harm a person's central nervous system, reduce visual reaction time, reduce hand

steadiness, and reduce eye-hand coordination.  ECF No. 50-5 at PageID#: 1947.  Chronic

exposure to manganese can result in feelings of weakness, lethargy, tremors, a mask-like face,

and psychological disturbances.  ECF No. 50-5 at PageID#: 1947.  Chronic inhalation of

---

[3] S. H. Bell Co., *S. H. Bell Services*, http://www.shbellco.com/services/ (last visited July 1, 2015) (describing
Stateline's services to customers, including crushing, the types of materials handled, and how processed materials
are transported).

(4:13CV02735)

chromium can result in asthma, irritation of the respiratory tract, respiratory distress, and decreased respiratory function.  ECF No. 50-5 at PageID#: 1947.  Inhaled chromium is also linked to lung cancer.  ECF No. 50-5 at PageID#: 1947.  Plaintiffs contend that, as a result of their exposure to Defendant's emissions on their person and property, they were harmed, suffer ongoing harm, and are entitled to relief.  ECF No. 50 at PageID#: 1892, ¶ 30.

In 2008, the OEPA issued a report on the air quality of East Liverpool.  ECF No. 50-5. The OEPA documented elevated concentrations of airborne toxins in East Liverpool's ambient air, including results from a monitoring station about half a mile from Stateline where manganese concentrations were "… 3,500% [above] the [EPA's] 'no health effects' level[,]" and represented the highest average concentration detected by any state.  ECF No. 50-5 at PageID: 1951.  The OEPA concluded that there are "… unacceptably high concentrations of airborne manganese and chromium [in] the East Liverpool area."  ECF No. 50-5 at PageID: 1952.

In 2010, the OEPA ordered Defendant to implement control measures to reduce manganese emissions from Defendant's operations at Little England and Stateline.  ECF No. 50-11.  Although the OEPA only regulates the Ohio portion of Stateline, Defendant agreed to implement the order's control measures on emission units located not only in Ohio, but Pennsylvania as well.  ECF No. 50-11 at PageID#: 2043, ¶ 1.  The OEPA's order also provides that its provisions do not waive or compromise any other statutes or regulations applicable to Defendant.  ECF No. 50-11 at PageID#: 2055, ¶ VIII.

In 2011, the OEPA granted Defendant an air pollution Permit-to-Install and Operate ("PTIO") for Stateline.  ECF No. 50-13.  Under the terms of the PTIO, Defendant may install and operate specific emission-producing units.  ECF No. 50-13 at PageID#: 2106.  The PTIO specifies the Defendant's annual emission limit, record-keeping and monitoring requirements,

(4:13CV02735)

and testing methods for each individual emission unit.  ECF No. 50-13.  The PTIO obligates

Defendant to monitor Stateline's manganese and chromium emissions, by unit, and report them

to the OEPA semiannually.  ECF No. 50-13 at PageID#: 2123; 2130 ¶ 2.  Defendant must also

submit quarterly reports to the OEPA documenting any month during which Defendant exceeded

its manganese or chromium emission limits.  ECF No. 50-13 at PageID#: 2129.  Defendant must

also keep all PTIO-required records for five years from the date when the record was created,

including monitoring data, test-chart recordings, and maintenance records.  ECF No. 50-13 at

PageID#: 2106.

In 2014, an environmental consulting firm collected and analyzed soil samples from

Plaintiffs' individual properties.  ECF No. 50-16.  The firm's analysis revealed manganese

deposits on Plaintiffs' properties ranging from 1,200 to 15,000 milligrams per kilogram.  ECF

No. 50-16.  All of the samples exceeded Ohio's average expected amount of manganese that

occurs naturally.  ECF No. 50-16.  Half of the samples exceeded the EPA's Health Based Single

Chemical Residential Generic Contact Standard.  ECF No. 50-16.

Plaintiffs assert that they were harmed by manganese and chromium emissions generated

by Defendant's operations, and bring seven claims against Defendant, including: (1) trespass; (2)

private nuisance; (3) negligence; (4) public nuisance; (5) statutory nuisance; (6) nuisance *per se*;

and (7) medical monitoring.  ECF No. 50, *amend. by* ECF No. 55.[4]  Defendant moves the Court

under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' claims for failure to state a claim, or in the

alternative, abstain from this action based on the doctrine of primary jurisdiction.  ECF No. 53.

---

[4] By joint stipulation among the parties, Plaintiffs dismissed their claims for: intentional fraudulent concealment; constructive fraud; citizen suit enforcement of the Resource Conservation and Recovery Act ("RCRA") § 6972(a)(1)(A); citizen suit enforcement of RCRA § 6972(a)(1)(B); and personal liability of responsible corporate officers.

(4:13CV02735)

Defendant also argues that the Clean Air Act ("CAA") preempts Plaintiffs' state law claims; and that Plaintiffs' claims related to chromium and Little England are time-barred.  ECF No. 53.

For the reasons discussed below, the Court grants in part, and denies in part, Defendant's Motion to Dismiss.  Specifically: (1) the Court will not abstain from this action because of the doctrine of primary jurisdiction; (2) the CAA does not preempt Plaintiffs' claims; (3) Plaintiffs' claims related to chromium are not time-barred; (4) Plaintiffs' claims related to Little England are time-barred; (5) Plaintiffs' claim for statutory nuisance is dismissed without prejudice; (6) Plaintiffs' claims for medical monitoring, public nuisance, and nuisance *per se* are dismissed; and (7) Plaintiffs' claims for trespass, private nuisance, and negligence remain.

## II.    Legal Standard

To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  It also must "state a claim to relief that is plausible on its face." *Id.* at 570.  Upon reviewing a Motion to Dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the [M]otion to [D]ismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

Claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)).  The factual allegations in the complaint "must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure §*

(4:13CV02735)

1216, pp. 235-36 (3d ed. 2004)).  In addition to reviewing the claims set forth in the complaint, a

court may also consider exhibits, public records, and items appearing in the record of the case as

long as the items are referenced in the complaint and are central to the claims contained therein.

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.    Discussion

#### A. The Court will not abstain from this case based on the doctrine of primary jurisdiction

Before considering the adequacy of Plaintiffs' complaint, the Court will first address

Defendant's plea for the Court to abstain.  Defendant argues the Court should abstain because

this case involves technical and policy considerations within the scope of the OEPA and EPA.

ECF No. 53-2 at PageID#: 2208.  Defendant also argues that the OEPA's and EPA's ongoing

investigation into emissions from Stateline support its position that this Court should abstain

from this matter.  ECF No. 57 at PageID#: 3118.

The doctrine of primary jurisdiction allows courts to refer a matter to the relevant agency

"whenever enforcement of the claim requires the resolution of issues which, under a regulatory

scheme, have been placed within the special competence of an administrative body[.]"  *United

States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956).  No fixed formula exists for applying the

doctrine of primary jurisdiction.  *Id*.  Generally, courts defer to administrative agencies for three

reasons: "(1) to advance regulatory uniformity; (2) to answer a question ... within the agency's

discretion; and (3) to benefit from technical or policy considerations within the agency's ...

expertise."  *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) (internal

citations and quotation marks omitted).  "Overall, in light of the federal courts' unflagging

obligation to exercise the jurisdiction accorded them, primary jurisdiction is limited to cases

(4:13CV02735)

where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *U.S. ex rel. Wall v. Circle C Const., LLC*, 697 F.3d 345, 352 (6th Cir. 2012) (internal citations and quotation marks omitted).

The Court is not persuaded by Defendant's argument.  Plaintiffs' claims for trespass, private nuisance, and negligence seek redress for alleged harm to Plaintiffs committed by the Defendant;[5] such actions do not impact the OEPA's and EPA's regulatory scheme governing emissions.  Furthermore, legal determinations of trespass, private nuisance, and negligence are not issues that fall within the OEPA's and EPA's discretion.  Finally, the standards for trespass, private nuisance, and negligence to be applied in this case fall within the established competence of the courts.  To the extent that this case requires expertise, it can be provided by the parties to support their legal causes of action and defenses.

**B. Plaintiffs' claims are not preempted by the Clean Air Act**

This case presents a novel issue.  Stateline is physically located in both Ohio and Pennsylvania.  ECF No. 50-1.  Neither Party's pleadings nor this Court's diligence uncovered any analogous case involving a single source of emissions collocated in two states.

Courts assume that federal statutes do not preempt traditional police powers of the state "unless that was the clear and manifest purpose of Congress."  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  Although the CAA regulates air pollution at the federal level, states retain broad control "[s]o far as factories, incinerators, and other stationary [sources of pollution] are implicated[.]"  *Washington v. General Motors Corp.*, 406 U.S. 109, 114 (1972).  Major federal environmental regulatory statutes, like the Clean Air Act ("CAA"), preempt state law claims when the facility emitting pollution is located outside the state.  *See Int'l Paper Co. v.*

---

[5] As discussed below, the Plaintiffs' other causes of action are dismissed.  Accordingly, this Court declines to analyze their impact related to the doctrine of primary jurisdiction.

(4:13CV02735)

*Ouellette*, 479 U.S. 481, 497–500 (1987) (holding that Vermont state law nuisance claims against a New York point source are preempted by the Clean Water Act).  However, when the facility emitting pollution is located within the state, that state's common law claims are not preempted by the CAA.  *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342 (6th Cir. 1989) (holding that Michigan state law claims against a Michigan trash incinerator are not preempted by the CAA).

Defendant argues that, for the purpose of analyzing whether the CAA preempts Plaintiffs' claims, Stateline must be considered a source located outside of Ohio.  ECF No. 53-2 at Page ID#: 2176.  Because Plaintiffs allege they were harmed by emissions from Stateline, at least some of those emissions were generated on the Pennsylvania side of the facility.  ECF No. 57 at PageID#: 3102.  Therefore, Defendant argues, Stateline should be treated as an out-of-state source.  ECF No. 57 at PageID#: 3102–03.

Plaintiffs argue that Stateline should be considered an Ohio source of emissions because the substantial majority of Defendant's emissions originate from units located in Ohio.  ECF No. 56 at PageID#: 2473.  Stateline includes 24 emission units, 18 of which are located in Ohio and 6 in Pennsylvania.  ECF No. 56 at PageID#: 2473.  Plaintiffs also argue that Defendant voluntarily waived its preemption defense when Defendant agreed to implement the 2010 OEPA order's provisions to the six emission units located in Pennsylvania.[6]  ECF No. 56 at PageID#: 2473.

The purpose of regulatory preemption of state law claims is to avoid upsetting the balance of public and private interests addressed by a federal act.  *See generally Ouellette*, 479 U.S. at 495.  In *Ouellette*, Vermont landowners brought a Vermont common law nuisance suit

---

[6] Plaintiff's argument that Defendant consented to OEPA jurisdiction based on the 2010 order is flawed.  The order itself provides that its provisions do not waive or compromise any other statutes or regulations applicable to Defendant.  ECF No. 50-11 at PageID#: 2055, ¶ VIII.

8

(4:13CV02735)

against an operator of pulp and paper mill located in New York.  *Id.* at 483.  Writing for the

majority, Justice Powell, held that: (1) the Clean Water Act preempted Vermont nuisance law to

the extent that the law sought to impose liability on a New York point source, but (2) the Act did

not bar aggrieved individuals from bringing nuisance claims pursuant to the law of a source state.

*Id.* at 497.  Justice Powell explained why the state law claims against in-state sources of pollution

did not upset the Clean Water Act's balance:

> Because the [Clean Water] Act specifically allows source States to impose stricter
> standards, the imposition of source-state law does not disrupt the regulatory partnership
> established by the permit system. … [T]he restriction of suits to those brought under
> source-state nuisance law prevents a source from being subject to an indeterminate
> number of potential regulations. Although [source state] nuisance law may impose
> separate standards and thus create some tension with the permit system, a source only is
> required to look to a single additional authority, whose rules should be relatively
> predictable. Moreover, States can be expected to take into account their own nuisance
> laws in setting permit requirements.

*Id.* at 498–99.

Justice Powell's reasoning in *Ouellette* supports Plaintiffs' argument that the CAA does

not preempt Ohio state law claims against Stateline.  Stateline's emission-producing units are

primarily located in, and regulated by, Ohio.  Ohio law already informs the regulatory regime to

which Defendant must comply, so there is no risk that applying Ohio law will disrupt the

regulatory partnership established by the CAA.  Unlike the appellant in *Ouellette*, Defendant is

not confronted with an "indeterminate number of potential regulations."  *Id.*  Instead, Defendant

is addressing predictable common law claims originating from that state in which Stateline is co-

located and where the majority of Stateline's emission units are regulated.

Defendant's argument that the CAA preempts Ohio state law claims because Stateline

spans Ohio and Pennsylvania also misreads the congressional intent of the CAA.  The savings

9

(4:13CV02735)

clause of the CAA[7] negates the inference that Congress intended to preclude state causes of action.  S*ee also Her Majesty The Queen*, 874 F.2d at 342–343 ("[the plain language of the CAA's savings clause] … clearly indicates that Congress did not wish to abolish state control.")  Preempting Plaintiffs' Ohio state law claims against Stateline would result in *de facto* federal preemption of all state law claims.  This would create a peculiar result.  Stateline would be subject to Ohio state law claims if Defendant shut down the six emissions units located in Pennsylvania, but not if it shut down five of the six emission units.

The Court concludes that the CAA does not preempt Plaintiffs' state law claims.  The plain language of 42 U.S.C. § 7604(e) confirms that Congress intended to allow state law claims.  Higher courts also provide two strong avenues of support.  First, Justice Powell's reasoning for why state law claims against in-state sources of pollution do not upset a federal environmental act's balance is controlling.  *Ouellette*, at 498–99.  Second, the Sixth Circuit agrees that a state claim against an in-state source of pollution is simply "…an instance where a state is … enforcing more stringent pollution controls as authorized by the CAA." *Her Majesty The Queen*, 874 F.2d at 344.  Alone, these reasons are compelling; taken together, they form a persuasive argument against the CAA preempting Plaintiffs' state law claims.[8]

### C. Plaintiffs' claims relating to chromium remain

Defendant asserts that Plaintiffs' claims relating to chromium are barred by the statute of limitations because they were first introduced in Plaintiffs' second amended complaint.  ECF No.

---

[7] The CAA provides that "[n]othing in [the CAA's saving clause] shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief."  42 U.S.C. § 7604(e) (1990).

[8] The OEPA monitors and regulates Stateline's emissions by individual units located in Ohio.  *See* ECF No. 50-11, PageID#: 2041 ("A portion of the Stateline Facility is located in Pennsylvania and is not regulated by the Ohio EPA.").  Plaintiffs concede that they are pursuing claims based on emissions emanating only from Ohio.  ECF No. 56, PageID#: 2479.  The Court does not purport to have jurisdiction over the emission units located in Pennsylvania.  Plaintiffs must restrict their claims to only those units physically located in Ohio.

(4:13CV02735)

53-2 at PageID#: 2184.  Defendant argues that any chromium-related claims constitute new and separate conduct, and therefore, under Fed. R. Civ. P. 15(c)(2), such claims cannot relate back to the date of the original pleading.  ECF No. 57 at PageID#: 3109.

Rule 15(c)(2) is "based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence . . . ." *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1997).  "When applying this standard to the facts of a given case, the Court [must consider] … whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007) (internal citation omitted). "[Rule 15(c)(2)] also must be interpreted in light of the fundamental tenor of the [Federal Rules of Civil Procedure] which is one of liberality rather than technicality." *Id*. (internal quotations and citation omitted).

Here, Defendant mistakenly asserts that Plaintiffs first introduced chromium in their second amended complaint.  ECF No. 53-2 at PageID#: 2184.  Plaintiffs' first complaint alleged that Defendant was responsible for chromium emissions in East Liverpool.  ECF No. 1 at PageID#: 6, ¶ 20.  Plaintiffs' pleadings have also consistently referenced findings from the 2008 OEPA study[9] which "documented unacceptably high concentrations of airborne manganese and chromium."  ECF No. 50-5 at PageID#: 1952.  Finally, the Defendant's emissions are the core conduct from which Plaintiffs' claims arise.  Plaintiffs' pleadings, therefore, sufficiently placed

---

[9] Plaintiff's first reference to the 2008 study was in Plaintiff's original complaint.  ECF No. 1 at PageID#: 6, ¶ 19.

(4:13CV02735)

Defendant on notice of potential claims arising from Defendant's emissions, including chromium emissions.  Plaintiffs' claims related to chromium remain.

### D. Plaintiffs' claims relating to Little England are time-barred

Under Ohio law, trespass, private nuisance, and negligence claims are subject to a four-year statute of limitations.  R.C. § 2305.09.  Defendant argues that Plaintiffs' claims related to Little England, which Defendant closed in 2010, are time-barred because Plaintiffs knew about Little England's alleged tortious emissions at least since 2008, when OEPA released its report on air quality in East Liverpool.  ECF No. 53-2 at PageID#: 2183.  As such, all claims against Little England expired in 2012.  ECF No. 53-2 at PageID#: 2184.

Plaintiffs respond that their claims related to Little England arise from the Defendant's same conduct alleged in Plaintiffs' original pleading.  ECF No. 56 at PageID#: 2489.

Ohio law recognizes that a trespass or private nuisance may be either *continuing* or *permanent*.[10]  A *continuing* trespass or private nuisance "arises when the [defendant's] tortious conduct is ongoing, perpetually generating new violations."  *Kramer v. Angel's Path, LLC*, 882 N.E.2d 46 (Ohio Ct. App. 2007) (internal citations and quotation marks omitted).  When a defendant's tortious act "… constitutes a continuing course of conduct …" the statute of limitations period is tolled.  *Sexton*, 883 N.E.2d at 1019.  "Conversely, a permanent [trespass or private] nuisance occurs when the [defendant's] tortious act has been completed, but the plaintiff continues to experience injury in the absence of any further activity by the defendant."  *Kramer*, 882 N.E.2d at 52 (internal citation omitted). The statute of limitations for a claim against a *permanent* trespass or nuisance "… begins to run at the time that the [tortious conduct] begins or

---

[10] Under Ohio law, when determining whether the statute of limitations should be tolled, the distinction between "… conduct that constituted a nuisance rather than a trespass" is immaterial.  *Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008).

(4:13CV02735)

is first noticed, provided that the permanent nature of the [tortious conduct] can be ascertained at that time." *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1162 (Ohio Ct. App. 1993) (internal citation omitted). *See also Blankenship v. S.H. Bell Co.*, No. 98-CO-14, 1999 WL 1279173 (Ohio Ct. App. Dec. 22, 1999) (rejecting the defendant's argument that the company's emissions from ongoing operations constituted a *permanent*, rather than *continuous*, source of emissions).

Here, Defendant closed Little England in 2010.  ECF No. 53-2 at PageID#: 2184.  Once Defendant closed Little England, any alleged tortious conduct arising from Defendant's operations was completed.  Any act of trespass or private nuisance attributable to Defendant's Little England operations must be classified as *permanent*, not *continuous*, for determining whether to toll the four-year statute of limitations.  All claims against Little England, including Plaintiffs', expired in 2014.  Plaintiffs filed the second amended complaint on March 30, 2015.

This Court is not persuaded by Plaintiffs' argument that adding claims related to Little England should relate back to Plaintiffs' original complaint under Fed. R. Civ. P. 15(c)(1)(B). ECF No. 56 at PageID#: 2489.  First, unlike the chromium claims, Plaintiffs did not mention Little England in pleadings until the second amended complaint.  ECF No. 50 at PageID#: 1891. Second, Defendant's operations in Little England and Stateline involved separate personnel working on independent jobs at distinct physical locations.  Finally, Defendant closed Little England three years prior to Plaintiffs' filing of the original complaint.  Taken together, the Court finds that Plaintiffs' original complaint did not adequately put Defendant on notice that it could be called to answer for the allegations against Little England in an amended pleading.  *See generally Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) ("Notice and

(4:13CV02735)

substantial prejudice to the opposing party are critical factors in determining whether an amendment [relating back  to the date of the original complaint] should be granted.").

For the reasons stated above, Plaintiffs' claims against Defendant's Little England operations are time-barred.

### E. Plaintiffs' claims for trespass and private nuisance arising from Stateline's emissions are not time-barred

Defendant asserts that Plaintiffs' claims for trespass and private nuisance are time-barred under R.C. § 2305.09.  ECF No. 53-2 at PageID#: 2180.  Defendant argues that, under Ohio law, Plaintiffs' claims against Defendant are for *permanent*, not *continuous*, trespass and private nuisance.  ECF No. 53-2 at PageID#: 2180–82.  Defendant argues, therefore, that the statute of limitations began to run in 2008 when the OEPA released its report on air quality in East Liverpool.  ECF No. 53-2 at PageID#: 2180–82.

As discussed above, Ohio law distinguishes *continuing* and *permanent* trespass or private nuisance claims.  A *continuing* trespass or private nuisance "arises when the [defendant's] tortious conduct is ongoing, perpetually generating new violations."  *Kramer*, 882 N.E.2d at 52.  As mentioned above, when a defendant's tortious act has been completed but plaintiff experiences ongoing injury without further activity on defendant's part, the act constitutes a permanent trespass or nuisance. *Id*.  In *Sexton*, the Ohio Supreme Court clarified the concepts of *continuing* versus *permanent* trespass or nuisance.  *Sexton*, 88 N.E.2d at 1018.  The Court held that a *continuing* trespass or nuisance occurs when some ongoing tortious activity may be attributed to a defendant.  *Id*.

Here, Defendant's Stateline facility continues to operate and generate emissions.  ECF No. 53-2 at PageID#: 2171.  Plaintiffs allege that Defendant's Stateline operations have generated, and continue to generate, emissions that harmed, and continue to harm, Plaintiffs.

14

(4:13CV02735)

ECF No. 50 at PageID#: 1891.  Since Stateline continues to operate, under Ohio law, Plaintiffs'

allegations of harm by emissions attributable to Defendant fall within the meaning of *continuing*

trespass and private nuisance.

Defendant also asserts that Plaintiffs' claims are self-serving and unsupported attempts to

characterize Defendant's operations as *continuing*.  ECF No. 53-2 at PageID#: 2181.

Defendant's argument is incorrect.  Plaintiffs' pleading includes ample support for their claims

that Defendant's conduct is tortious and continuing, including: the 2008 OEPA air quality study

which documented "… unacceptably high concentrations of airborne manganese and chromium

for the East Liverpool area."[11] ; the 2010 and 2013 OEPA orders obligating Defendant to

implement emission control systems to Stateline because Defendant's operations "… cause or

significantly contribute to unacceptable ambient air concentrations of manganese;"[12] and analysis

results from surface soil samples collected from Plaintiffs' property in 2014 that show elevated

levels of manganese.[13]  Plaintiffs' pleadings provide a sufficiently plausible foundation for its

claims against Defendant.  It is a question of fact whether Defendant's emissions harmed

Plaintiffs, and if so, of what extent.  The Court, therefore, shall take the pleadings as true and

construe them "liberally in favor of the party opposing the motion to dismiss."  *Scott v. Ambani*,

*577 F.3d 642, 646 (6th Cir. 2009)*.

For the reasons stated above, the Court finds that Plaintiffs' claims against Defendant for

trespass and private nuisance from Stateline's emissions are not time-barred.

---

[11] ECF No. 50-5 at PageID#: 1952.
[12] ECF No. 50-9 at PageID#: 1977; ECF No. 50-11 at PageID#: 2042.
[13] ECF No. 50-16.

(4:13CV02735)

### F. Medical monitoring is not an independent cause of action under Ohio law

Defendant argues, and Plaintiffs concede, that Ohio law does not recognize medical monitoring as an independent cause of action.  ECF No. 57 at PageID#: 3117.  Plaintiffs' claim for medical monitoring is therefore dismissed.

Although medical monitoring is not a cause of action, under Ohio law, it is a form of damages for an underlying tort claim.  *Wilson v. Brush Wellman, Inc.*, 817 N.E.2d 59, 63 (Ohio 2004).  If a defendant's conduct increased a plaintiff's risk of suffering from a disease or illness, medical monitoring may be "a compensable item of damage when liability is established under traditional tort theories of recovery."  *Day v. NLO*, 851 F.Supp. 869, 880 (S.D. Ohio 1994).  A plaintiff is not required to demonstrate physical injuries in order to obtain medical monitoring relief, but must "show by expert medical testimony that [plaintiffs] have increased risk of disease which would warrant a reasonable physician to order monitoring."  *Id.* at 881.  "Therefore, if the Plaintiffs can establish liability and an increased risk of disease", they may "be entitled to medical monitoring …" as a remedy.  *Id.*

### G. Plaintiffs' pleadings sufficiently support its claims for damages

Defendant argues that Plaintiffs fail to allege substantial damage to support claims for trespass and private nuisance.  ECF No. 53-2 at PageID#: 2191-92.  Defendant notes that a claim for trespass caused by airborne pollutants requires a plaintiff to show substantial physical damage to the land, or substantial interference with the plaintiff's reasonable and foreseeable use of the land.[14]  ECF No. 53-2 at PageID#: 2191-92.  Defendant also asserts that the private

---

[14] "Although 'substantial damage' is not a traditional element of trespass", Ohio law requires a plaintiff to show such damages when bringing a trespass claim for airborne particles and pollutants deposited on a plaintiff's land. *Williams v. Oeder*, 659 N.E.2d 379, 383 (Ohio Ct. App. 1995).

(4:13CV02735)

nuisance claim fails because Plaintiffs did not allege damages connected to the use or loss of enjoyment of their property.  ECF No. 53-2 at PageID#: 2192.

Under Ohio law, a plausible claim for private nuisance requires a plaintiff to allege an injury that is real, material, and substantial.  *Eller v. Koehler*, 67 N.E. 89 (Ohio 1903).  A real, material, and substantial injury may include: the diminution in the value of a plaintiff's property; the cost of repairs; loss of use of the property; or compensation for annoyance, discomfort, and inconvenience caused by a defendant's tortious conduct.  *Widmer v. Fretti*, 116 N.E.2d 728 (Ohio Ct. App. 1952).  To state a plausible airborne particle trespass claim, a plaintiff must allege that the defendant's emitting practices contaminated or substantially damaged her property.  *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 641 (N.D. Ohio 2014).

Here, Plaintiffs' complaint alleges that they were harmed and their property damaged by exposure to manganese and chromium emissions generated by Defendant's operations.  As a result of this exposure, Plaintiffs allege they suffer and continue to suffer an increased risk of injury and disease, and that their properties have become contaminated.  Defendant argues that Plaintiffs' complaint is deficient because it fails to allege how Defendant's emissions damaged or interfered with the Plaintiffs' use of their property.  As noted above, however, Ohio law recognizes that an increased risk of suffering from a disease or illness may be a compensable item of damage.  *Day*, 851 F.Supp. at 879.  If Defendant's emissions harmed Plaintiffs while they resided at their properties, such emissions could plausibly result in a substantial interference with Plaintiffs' reasonable and foreseeable use of their land.  Plaintiffs' complaint also includes soil sample analysis results from their properties, all of which reveal manganese contamination exceeding the amount that occurs naturally, and half of which exceed the EPA's Health Based Single Chemical Residential Generic Contact Standard.  ECF No. 50-16.

17

(4:13CV02735)

To summarize, Plaintiffs have sufficiently alleged that toxic emissions were produced by Defendant's operations, and that Plaintiffs and their property were exposed to these emissions. Plaintiffs allege that, because of Defendant's conduct, they face increased risk of disease and that their property has been contaminated.  Since Plaintiffs have presented a plausible claim, factual allegations must be accepted as true.  The Court finds that Plaintiffs have sufficiently pled damages to survive Defendant's challenge.

**H. Plaintiffs' public nuisance claim fails as a matter of law**

Plaintiffs claim Defendant is liable for creating a public nuisance.  ECF No. 50 at PageID#: 1917-18. Plaintiffs alleges that Defendant's emissions endangered the health, safety, or welfare of the public, or caused unreasonable injury or impacts on East Liverpool's residents living nearby, including the Plaintiffs.  ECF No. 50 at PageID#: 1918.

Under Ohio law, a public nuisance is an unreasonable interference with a right common to the public.  *Brown*, 622 N.E.2d at 1153.  Where a facility operates under sanction of law, it cannot be a common law public nuisance, but only a statutory nuisance.  *Id.* at 1160.  Conduct by a defendant which  "… would be a [public] nuisance at common law, [but] which is fully authorized by statute or administrative regulation is not an actionable tort."  *Id.* at 1159.  The policy justification for not allowing tort action against conduct that would be a common law public nuisance "… is especially [compelling] where a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct exist." *Id*.  *See also Hager v. Waste Technologies Indus*., No. 2000–CO–45, 2002 WL 1483913 (Ohio Ct. App. June 27, 2002)* (holding that defendant's waste incineration facility cannot be a common law public nuisance because the facility operates under sanction of law).

(4:13CV02735)

Here, Defendant's Stateline operates under an air pollution PTIO issued by the OEPA. ECF No. 50-13 at PageID#: 2097.  Since Stateline operates under the sanction of law, it cannot be a common law public nuisance.  *See Brown*, 622 N.E.2d at 1160.  Consequently, Plaintiffs' public nuisance claim is not an actionable tort.

### I. Plaintiffs' claim for statutory nuisance is dismissed without prejudice

Plaintiffs also claim Defendant is liable for creating a statutory nuisance.  ECF No. 50 at PageID#: 1918-20.  In particular, Plaintiffs allege that Defendant's emissions are violating R.C. § 3767.13(A),[15] and Ohio Admin. Code § 3745-15-07(A).[16]  ECF No. 50 at PageID#: 1919 ¶140; ¶145.

The general rule is that private individuals lack standing to pursue public statutory nuisance claims.  *Brown*, 622 N.E.2d at 1160.  "When the particular harm involved consists of interference with the use and enjoyment of land, the landowner may recover either on the basis of the particular harm to her resulting from the public nuisance or on the basis private nuisance." *Id*.  A plaintiff may only recover for a public statutory nuisance if her injuries are distinct from those suffered by the public at large.  *Kramer*, 882 N.E.2d at 52.

Here, Plaintiffs' claim against Defendant for private nuisance and statutory nuisance are based on the same nucleus of facts resulting in the same type of harm.  In relevant part, Plaintiffs allege Defendant's operations produced emissions that harmed Plaintiffs' health and property. ECF No. 50 at PageID#: 1909 ¶ 99; PageID#: 1919 ¶ 142.  Plaintiffs also seek class certification to represent all Ohio residents with property or who reside within a two-mile radius of

---

[15] § 3767.13(A) provides that "[n]o person shall … maintain a … business … which, by occasioning noxious exhalations … becomes injurious to the health, comfort, or property of individuals or of the public."  R.C. § 3767.13.

[16] § 3745-15-07(A) provides that "emission[s] … into the open air from any source or sources … in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is … a public nuisance … [and it is] unlawful … to cause, permit or maintain any such public nuisance." A.C. § 3745-15-07.

(4:13CV02735)

Defendant's Stateline facility.  ECF No. 50 at PageID#: 1888 ¶ 4.  None of the individual

Plaintiffs pled that they suffered a distinct injury or harm from those of the general public who

live near Defendant's operations.

Because individual Plaintiffs do not plead distinct injury or harm from those suffered by

the general public, Plaintiffs lack standing to bring a statutory nuisance claim against Defendant.

Plaintiffs' statutory nuisance claim is dismissed without prejudice.[17]

**J. Plaintiffs' nuisance *per se* claim fails as a matter of law**

Plaintiffs allege Defendant engages in an abnormally dangerous activity for which

Defendant should be held strictly liable for any resulting harm.  ECF No. 50 at PageID#: 1920-

21.  Plaintiffs asserts that Defendant's Stateline operations: (1) create a high risk of harm to

Plaintiffs' properties; (2) are likely to harm Plaintiffs; (3) cannot eliminate the risk of harming

Plaintiffs by exercising reasonable care; (4) are not a matter of common usage; and (5) are

inappropriate in the place that Defendant operates.  ECF No. 50 at PageID#: 1921.

Defendant disputes Plaintiffs' allegation that the Stateline operations constitute an

abnormally dangerous activity.  ECF No. 53-2 at PageID#: 2196-98.  Defendant points out that

Plaintiffs do not identify any specific activity of the Stateline operations that is abnormally

dangerous.  ECF No. 53-2 at PageID#: 2197.  Instead, Plaintiffs assert a conclusion that

Defendant's Stateline operations are abnormally dangerous.  ECF No. 53-2 at PageID#: 2198.

Under Ohio law, a plaintiff's nuisance *per se* claim seeks to impose strict liability on a

defendant engaging in ultrahazardous activity which results in harm to the plaintiff, regardless of

whether the defendant acted with reasonable care.  *Cincinnati v. Beretta U.S.A. Corp.*, 768

---

[17] The Court leaves open the possibility that a future plaintiff may have distinct injuries that entitle her to a statutory nuisance claim.  The Court notes that, under Ohio law, a distinct injury "…is different in kind rather than degree from that suffered by other members of the public[.]"  *Miller v. W. Carrollton*, 632 N.E.2d 582, 586 (Ohio Ct. App. 1993).

(4:13CV02735)

N.E.2d 1136 (Ohio 2002).  Ultrahazardous activities are lawful acts that are "so dangerous as to be allowable only on the terms of insuring the public against them."  *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 728 (Ohio 1944).  To determine whether a defendant's conduct qualifies as ultrahazardous, a court considers: (1) if the defendant's conduct creates a high degree of risk of harm to others; (2) the likelihood that the defendant's conduct will result in great harm to others; (3) whether a defendant could reduce or eliminate the risk of harm through the exercise of ordinary care; (4) how common or uncommon the activity is; (5) whether the defendant's conduct is appropriate for the location where it is found; and (6) the extent to which the activity's social value outweighs the danger of engaging in it.  *Abraham v. BP Exploration & Oil, Inc.*, 778 N.E.2d 48, 54 (Ohio Ct. App. 2002).  Generally, Ohio courts only find that an activity is ultrahazardous in four scenarios: blasting, transportation, or storage of explosives; cases involving dangerous animals; nuclear accidents; and when examining ultrahazardous activity as an affirmative defense.  Christopher M. Ernst, Baldwin's Oh. Prac. Tort L. § 26:1 (2d ed. 2014).

Ohio courts examine a party's specific conduct to decide which activity may be ultrahazardous.  In *Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co.*, 54 N.E. 528 (Ohio 1899), the appellant stored nitroglycerine on his property and an explosion occurred.  Although the trial court found that the appellant was not negligent, the court held that *storing* nitroglycerine was an ultrahazardous activity, and appellant was strictly liable for any resulting harm.  *Id*. at 529−531 (emphasis added).  In *Am. States Ins. Co. v. Guillermin*, 671 N.E.2d 317 (Ohio Ct. App. 1996), the defendant's pet lion escaped and mauled a person.  The court held that *keeping* a wild and vicious animal is an ultrahazardous activity, and defendant was strictly liable for any resulting harm.  *Id*. at 323; (emphasis added).

(4:13CV02735)

Here, Plaintiffs pled that Defendant's operations should be considered ultrahazardous. Unlike the appellee in *Bradford* and the plaintiff in *Am. States*, Plaintiffs in the instant matter did not indicate which of Defendant's specific activities Plaintiffs believe are ultrahazardous.  ECF No. 50 at PageID#: 1920-21, ¶151.  Without such specificity, Plaintiffs' nuisance *per se* claim is "…supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663.

Further, the factual materials that Plaintiffs include as part of the complaint undermine their nuisance *per se* claim.  The OEPA's orders directing Defendant to implement emission reduction technology imply that Defendant can abate its manganese and chromium emissions by exercising reasonable care.  If abatement is possible, then Defendant cannot be liable for a nuisance *per se* claim.  *Brown*, 622 N.E.2d at 1159 ("The essence of [nuisance *per se*] is that no matter how careful one is, such activities are inherently injurious and cannot be conducted without damaging someone else's property or rights.").

The Court dismisses Plaintiffs' nuisance *per se* claim for the reasons stated above.

### IV.    Conclusion

For the reasons stated above, the Court grants in part, and denies in part, Defendant's Motion to Dismiss (ECF No. 53).  Accordingly, Plaintiffs' claims for trespass, private nuisance, and negligence remain.  Plaintiffs' claim for statutory nuisance is dismissed without prejudice. Plaintiffs' remaining claims are dismissed.


IT IS SO ORDERED.


August 31, 2015                                              */s/ Benita Y. Pearson*
Date                                                          Benita Y. Pearson
                                                             United States District Judge